# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GARY B.,[1] | ) |
| | ) No. 19 CV 2000 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| | ) |
| | ) February 6, 2020 |
| Defendant. | ) |

## MEMORANDUM OPINION and ORDER

Gary B. ("Gary"), seeks disability insurance benefits ("DIB") based on his claim that after years of working as a consultant, contracting officer, and finance specialist for the federal government, he became disabled at the age of 47 by several physical and mental conditions. Before the court are the parties' cross-motions for summary judgment. For the following reasons, Gary's motion is granted, and the Commissioner's is denied:

## Procedural History

Gary filed his DIB application in October 2014 alleging a disability onset date of September 25, 2014. (Administrative Record ("A.R.") 86.) After his application was denied initially and upon reconsideration, (id. at 95, 114), Gary sought and was granted a hearing before an administrative law judge ("ALJ"), (id. at 128-32). In November 2017 Gary appeared for the hearing along with his attorney and a

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only Plaintiff's first name and last initial in this decision to protect his privacy to the extent possible.

vocational expert ("VE"). (Id. at 184-89.) In March 2018 the ALJ issued a decision finding that Gary is not disabled. (Id. at 15-29.) When the Appeals Council denied Gary's request for review, (id. at 1-3), the ALJ's decision became the final decision of the Commissioner, *see Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). In March 2019 Gary filed this lawsuit seeking judicial review of the Commissioner's decision, *see* 42 U.S.C. § 405(g), and the parties consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); (R. 10).

## The ALJ's Decision

The ALJ followed the standard five-step sequence in evaluating Gary's DIB claim. *See* 20 C.F.R. § 404.1520(a). At step one the ALJ determined that Gary has not engaged in substantial gainful activity since filing his application. (A.R. 17.) At step two the ALJ found that Gary's physical impairments of obesity, lumbar degenerative disc disease and stenosis, history of cervical stenosis with myelopathy status-post surgery, and left hip degenerative joint disease are severe, but that his mental impairments of depression and "anxiety-related symptomatology" are not severe. (Id. at 17-18.) In so ruling the ALJ assigned "no weight" to the opinion of the state agency's examining psychologist, (id. at 18), who in 2017 opined that Gary suffers from depressive disorder, generalized anxiety disorder with panic attacks, and chronic pain and that his ability and adaptive capacity to withstand the stress and pressures associated with day-to-day work activity are "poor," (id. at 898).

At step three the ALJ found that none of Gary's impairments meet or medically equal any listing. Regarding Gary's mental impairments, the ALJ

2

considered the paragraph B criteria and concluded that he had no more than mild limitations. (Id. at 18-19.) Before turning to step four, the ALJ assessed Gary as having a residual functional capacity ("RFC") to perform light work involving only occasional stooping and frequent climbing and balancing. (Id. at 20.) In her RFC discussion, the ALJ assigned "no weight" to the July 2017 opinion of Gary's treating psychologist, (id. at 28), who in 2015 and 2017 concluded that Gary suffers from functional limitations stemming from major depressive disorder and chronic pain, (id. at 898). The ALJ also assigned "no weight" to the opinion of the state agency's reviewing psychologist, (id. at 28), who, after reviewing the opinion of the state agency's examining psychologist and 2015 records from Gary's treating psychologist, opined that Gary has mild limitations, (id. at 102-04). At step four the ALJ found that Gary can perform his past relevant work as a contractor administrator and real estate utilization officer. (Id. at 28.) Accordingly, the ALJ concluded that Gary is not disabled. (Id. at 29.)

**Analysis**

Gary asserts that the ALJ's decision to assign "no weight" to the medical opinions about his mental impairments resulted in a flawed step-two determination and RFC assessment. He also challenges the ALJ's decision to assign "no weight" to the opinion of his primary care physician. In the alternative, Gary brings an Appointments Clause claim, arguing that the ALJ was unconstitutionally appointed. The court reviews the Commissioner's final decision to ensure that it is supported by substantial evidence, meaning "more than a scintilla" but no more

3

than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations and citations omitted). To adequately support a decision, the ALJ is required to "build a logical bridge from the evidence to [her] conclusion" that the claimant is not disabled. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *see also Minnick*, 775 F.3d at 935. The court will not reweigh the evidence or substitute its own judgment for the ALJ's. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). That said, if the ALJ committed an error of law or "based the decision on serious factual mistakes or omissions," reversal is required. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

### A. Step-Two and RFC Assessment

Gary first challenges the ALJ's findings at step two that his mental impairments are not severe and her subsequent failure to include any mental limitations in the RFC. He addresses these arguments together, asserting that the ALJ's decision to assign "no weight" to the medical opinions of his treating psychologist, Dr. J.L. Weems, the state agency's examining psychologist, Dr. Michael Stone, and the state agency's reviewing psychologist served as the catalyst for the ALJ's errors at step two and in her RFC analysis. The government responds that the ALJ reasonably assessed the opinions of the treating, examining, and reviewing psychologists and provided "good reasons" for rejecting them.

The ALJ may not substitute her own judgment for that of a medical professional by coming to medical conclusions not supported by the record. *See*

4

*Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (noting that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). While the ALJ need not evaluate every bit of testimony and evidence submitted, she must "sufficiently articulate [her] assessment of the evidence to assure [the court] that the ALJ considered the important evidence . . . and to enable [the court] to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (internal quotations and citations omitted). Furthermore, the ALJ may not select and discuss only that evidence which favors her conclusion, but rather must consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

Gary begins by challenging the ALJ's stated reasons for assigning "no weight" to Dr. Stone's conclusions following the December 2015 mental status examination that Gary suffers from depression, anxiety with panic attacks, and chronic pain. (R. 16, Pl.'s Mem. at 14-15 (citing A.R. 894-900).) Dismissing the opinion of the agency's own examining psychologist is an "unusual step" that the Seventh Circuit has counseled should cause the court to "take notice and await a good explanation." *See Beardsley*, 758 F.3d at 839. Here the ALJ discounted Dr. Stone's conclusions because she found them to be inconsistent with and unsupported by the objective medical evidence. (A.R. 18.) For support, the ALJ referred to Dr. Stone's "examination findings," treatment notes from Gary's treating psychologist, Dr. Weems, and records from "other providers" as examples of "objective medical evidence in the file" that undermine Dr. Stone's conclusions. (Id.)

5

The ALJ also noted that Gary taught college-level courses through 2016, work that the ALJ considered out of step with Dr. Stone's conclusions. (Id.) The court agrees with Gary that none of these is a good explanation for the unusual step of disregarding the examining psychologist's opinion.

First, the ALJ ignored how Dr. Stone's examination findings were consistent with the diagnoses and observations of Dr. Weems. Specifically, Dr. Stone diagnosed Gary with depressive disorder, generalized anxiety disorder with panic attacks, and chronic pain, (A.R. 898), which is in accord with Dr. Weems's May 2015 findings that Gary suffers from major depressive disorder and chronic pain, (id. at 848). Dr. Stone also observed that Gary exhibited the following: "periodic distractibility" but "was easily directed"; "a degree of depression and anxiety related to his military experience and subsequent chronic pain"; and "thought content [that] was positive for panic attacks, depression, and anxiety." (Id. at 896.) Similarly, Dr. Weems's treatment notes from May 2015 through August 2015 detail symptoms associated with depression like "disturbance of sleeping habits, sad mood, loss of appetite, loss of weight, [and] anxiety." (Id. at 851; see also id. at 853 ("feels frequently tired and fatigued but sleep is not restful"), 854 ("sleep pattern may be worsening"), 857 ("energy levels still relatively low"), 859-63 (same), 871 ("better appetite, better sleeping"), 872 (same), 874 ("seems exhausted and needing rest"), 875 ("very distressed," and "restless, exhausted, agitated"), 876 ("sleeping patterns have changed"), 879 ("feels the need to sleep more").) Dr. Weems also noted that Gary "would appear distracted" but "would easily get

back on task" when redirected and that Gary's "chronic pain and condition . . . has impacted him in every domain of his life functioning." (Id. at 852.) This supporting evidence went unmentioned in the ALJ's analysis of Dr. Stone's opinion, and she never explained her finding that Dr. Weems's observations undermine Dr. Stone's opinion.

Also, the ALJ focused on select portions of Dr. Stone's assessment and ignored evidence that contradicted her decision. For example, the ALJ cited Dr. Stone's findings that Gary had a good memory, had no difficulty comparing and contrasting objects, exhibited no difficulty with abstract thinking, and exhibited no impairment in his judgment, ability to perform calculations, or in his general fund of knowledge. (Id. at 18-19.) But she ignored Dr. Stone's assessment that Gary's "history, observed behavior, and mental status are consistent with depression, anxiety, and panic attacks." (Id. at 898.) These findings are in the same section of Dr. Stone's report, but the ALJ focused on the former while disregarding the latter, including Dr. Stone's diagnoses of depression and anxiety and his clinical impression that Gary's ability and adaptive capacity to withstand the stress and pressures associated with day-to-day work activity are "poor." (Id. at 897-98.) "An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Campbell v. Astrue*, 627 F.3d 299, 301 (7th Cir. 2010).

Second, the ALJ asserted that Dr. Weems's treatment notes show that Gary "mostly gets therapy" for "problems with his family/wife" and used this as a reason

7

to dismiss Dr. Stone's conclusions. (A.R. 18, 28.) But the ALJ did not cite specific treatment records or explain the significance of Gary's family issues and as explained above she glossed over portions of treatment records that appear to support Dr. Stone's opinion. Gary argues, and the court agrees, that the ALJ improperly "cherry picked" portions of treatment notes discussing Gary's family issues and disregarded those portions identifying his "emotional mood swings" and "intense frustrations," among other depressive symptoms. (R. 16, Pl.'s Mem. at 15.) Indeed, the ALJ appears to have dissected pieces of Dr. Weems's treatment notes that focus on Gary's family issues to illustrate the lack of compelling supporting evidence on which Dr. Stone based his conclusions. This is precisely the type of cherry-picking that the Seventh Circuit has held justifies a remand. *See O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (remanding because the ALJ cherry picked notes from the medical record supporting his finding that claimant's "major depression, recurrent severe" is not a severe impairment); *see also Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) (reversing because the ALJ ignored a line of evidence supporting claimant's serious mental-health issues).

Third, the ALJ impermissibly relied on the absence of concerns regarding Gary's mental functioning in the medical records of "other providers" who are not experts on mental illness. According to the ALJ, because "orthopedic examiners," "extensive physical therapy records," and "other providers" did not note concerns about Gary's mental functioning, Dr. Stone's conclusions are unsupported. (A.R. 18.) But these providers treated Gary's physical conditions, such as diabetes,

8

obesity, and chronic neck, back, and hip pain. Thus, there is simply no reason to expect that they would document concerns about Gary's mental functioning. *See Wilder v. Chater*, 64 F.3d 335, 377 (7th Cir. 1998) (noting that a physician asking about "an eye problem, or a back pain, or an infection of the urinary tract" is not looking to diagnose depression and, indeed, "may not even be competent to diagnose it"). The ALJ therefore should not have drawn a negative inference about the reliability of Dr. Stone's conclusions based on the absence of any discussion of mental impairments in medical records relating to physical impairments.

Lastly, the ALJ relied on Gary's ability to teach college-level courses as evidence to undercut Dr. Stone's conclusions. (See A.R. 18-19, 26, 28.) While Gary did teach college business classes the same year that Dr. Stone concluded that he has a poor ability and adaptive capacity to withstand the stress and pressures associated with day-to-day work activity, (id. at 43, 898), the Seventh Circuit "has instructed ALJs not to draw conclusions about a claimant's ability to work full time based on part-time employment," *see Weaver v. Berryhill*, 746 Fed. Appx. 574, 579 (7th Cir. 2018) (citing *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017). Here, the ALJ made this impermissible inference when she dismissed Dr. Stone's conclusions because of Gary's part-time position—a position which Gary claims was no longer offered to him after 2016 because of his impairments. (A.R. 45.) Because the ALJ did not sufficiently explain why Gary's part-time teaching position is inconsistent with Dr. Stone's findings, the negative inference she drew is unsupported.

9

Gary next attacks the reasons the ALJ provided for assigning "no weight" to the medical opinion form his treating psychologist Dr. Weems completed in July 2017, wherein Dr. Weems concluded that Gary's major depressive disorder and chronic pain prevent him from working full-time. First, the ALJ stated that the treating psychologist's notes "just document [Gary's] complaints, with no objective medical support to substantiate the degree" of limitation Dr. Weems posited. (Id. at 27.) But psychological assessments are based primarily on the patient's self-reported symptoms and responses to questioning. There are no objective tests to diagnose most mental illnesses. *See Aurand v. Colvin*, 654 Fed. Appx. 831, 837 (7th Cir. 2016) (noting that the professional opinion of a psychologist necessarily draws from the claimant's reported symptoms because "there is no blood test for bipolar disorder"). Therefore, an ALJ may not discount the opinion of a treating psychologist on the sole basis that his notes consist of complaints from his patient. *See Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) (citing *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015)). The government, relying on *Ghiselli v. Colvin*, 837 F.3d 771 (7th Cir. 2016), argues that a treating source's opinion may be properly discounted if it is "mainly comprised" of a claimant's subjective complaints. (See R. 19, Govt.'s Mem. at 12.) But the government's reliance on *Ghiselli* is misplaced because in that case an ALJ evaluated a claimant's subjective complaints about her severe physical impairments, not mental impairments. *Ghiselli*, 837 F.3d at 776.

The government also argues that Dr. Weems's treatment notes lack "objective medical support to substantiate the degree of limitation Dr. Weems posited"

because he "only noted mental status examination findings on one occasion, at the initial assessment in May 2015, and they were unremarkable." (R. 19, Govt.'s Mem. at 12.) Dr. Weems's initial mental health assessment was that Gary suffers from major depressive disorder and chronic pain. (A.R. 848.) Dr. Weems also noted in May 2015 that Gary presented with "hallmark depressive symptoms," (id. at 849), including "chronic pain, difficulty sleeping, difficulty concentrating and staying on task with objectives, depressed mood, loss of appetite, significant weight loss, [and] lack of interest in previously pleasurable activities," (id. at 847). Dr. Weems opined that Gary's "chronic pain and condition . . . has impacted him in every domain of his life functioning." (Id. at 852.) These findings are not, as the government claims "unremarkable," but rather remarkable for their consistency with Dr. Weems's July 2017 opinion that Gary has major depressive disorder and chronic pain. (Id. at 1851.) Furthermore, the ALJ failed to mention this objective medical evidence anywhere in her decision, leaving the court unassured that the ALJ considered this evidence in her analysis. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (emphasis in original).

The ALJ's second and third reasons for dismissing Dr. Weems's July 2017 opinion—the fact that there are no 2016 treatment records and that Gary did not mention to Dr. Weems the extent to which he was "engaging in various exercise

11

regimes"—are equally unpersuasive. (A.R. 27.) The ALJ apparently drew negative inferences from these absences in the treatment record, but she did not explain how they undercut Dr. Weems's July 2017 opinion. As to the missing 2016 treatment notes, the ALJ might have thought that Gary's apparent failure to seek psychiatric treatment in 2016 undercuts Dr. Weems's July 2017 opinion, but to so conclude would be speculative at best because that is not what the ALJ wrote in her opinion. She merely noted "that the record appears absent [] from this provider in 2016," without further explanation. (Id.) Even if the ALJ has discounted Dr. Weems's opinion based on the lack of treatment notes from 2016, an ALJ may not hold a treatment gap against the claimant without exploring the reasons for that gap. *See Ray v. Berryhill*, 915 F.3d 486, 490-91 (7th Cir. 2019). The ALJ did not do so here.

Similarly, regarding the absence of discussions in Dr. Weems's notes concerning Gary's physical activities, the ALJ stated, "even in the records provided, claimant does not mention the degree to which he was engaging in various exercise regimens." (A.R. 27.) The ALJ may have thought that Gary was not forthcoming to Dr. Weems about his physical activities, as the government suggests. (See R. 19, Govt.'s Mem. at 12.) Or the ALJ may have thought that Dr. Weems either purposely or carelessly omitted from his notes discussions he and Gary had about Gary's exercise regimen. Either way the ALJ should have articulated why she thought this absence in the record warranted discounting Dr. Weems's July 2017 opinion, particularly given that Dr. Weems's opinion pertains to Gary's mental functioning, not his physical limitations. (R. 16, Pl.'s Mem. at 16.) The ALJ was

required "to inform [her]self about facts relevant to [her] decision and to learn the claimant's own versions of those facts." *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring). She did not do so here.

Finally, the ALJ assigned "no weight" to the state agency's reviewing psychologist's opinion that Gary's mental impairments are severe because the reviewer's evaluation relied heavily on Dr. Stone's opinion. (A.R. 28.) While Gary does not address this aspect of the ALJ's explanation, the government argues that the general inconsistencies that the ALJ observed between Dr. Stone's conclusions and the objective record as a whole justify the ALJ's dismissal of the reviewing psychologist's opinion. (R. 19, Govt.'s Mem. at 15.) But this domino reasoning tumbled when the ALJ failed to provide good explanations for dismissing the conclusions of Dr. Stone. Moreover, the ALJ assigned "great weight" to the reviewing state agency medical consultants who opined on Gary's physical impairments, (A.R. 27-28), even though these non-examining sources gave "great weight" to Dr. Stone's opinion, (see, e.g., id. at 106 (notes from Dr. George Walcott explaining how he weighed Dr. Stone's opinion).) The ALJ's failure to reconcile her disparate treatment of opinions that relied on the same evidence casts doubts about the ALJ's evaluation of the opinions. Accordingly, a remand is warranted here because substantial evidence does not support the ALJ's decision to assign "no weight" to the opinions of Drs. Stone and Weems and the reviewing psychologist.

Remand is also necessary for the ALJ to reevaluate whether to account for any mental limitations in her RFC analysis. In crafting the RFC, the ALJ is

required to consider the combination of all the claimant's impairments, including those that are not severe. *See Ray*, 915 F.3d at 492. The ALJ must determine an individual's RFC "based upon consideration of all relevant evidence in the case record." SSR 96-6p, at *5; *see* 20 C.F.R. § 404.1545(a)(3). Here the ALJ's RFC discussion is tailored entirely to Gary's physical limitations and ignores mental limitations. (See A.R. 20-28.) For example, Dr. Weems indicated that Gary is precluded for 15 percent or more of the workday from the following: maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance; and being punctual within customary tolerances and completing a normal workday and work week without interruptions from psychologically based symptoms. (Id. at 1852-53.) Dr. Weems also indicated that Gary is precluded for 10 percent or more of the workday from the following: understanding, remembering, and carrying out detailed instructions; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being distracted by them; and responding appropriately to changes in the workplace. (Id.) Similarly, the reviewing psychologist opined that Gary has mild restriction of activities of daily living and difficulties in maintaining social functioning, and that Gary has moderate difficulties in maintaining concentration, persistence, or pace. (Id. at 103.) Because the ALJ must reweigh these opinions on remand, she must also articulate whether the mental limitations should be incorporated into the RFC, and if not, why not.

**B.  Treating Physician's Opinion**

Gary also asserts that the RFC is unsupported because the ALJ did not properly weigh the opinion of his primary care physician, Dr. Charlotte Mitchell. Gary does not argue that the ALJ should have given controlling weight to Dr. Mitchell's opinion.[2]  *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).  He instead argues that the ALJ did not provide a reasoned explanation for the weight she gave to the treating physician's opinion.  (See R. 16, Pl.'s Mem. at 18.)  The court agrees.  Applicable regulations require an ALJ to weigh a treating physician's non-controlling opinion by considering the length, nature, and extent of the treatment relationship, the frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion.  *See* 20 C.F.R. § 404.1527(c); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).  "If the ALJ discounts the physician's opinion after considering these factors [the court] must allow the decision to stand so long as the ALJ minimally articulates [her] reasons—a very deferential standard."  *Elder*, 529 F.3d at 415.

Here the ALJ did not sufficiently explain why she assigned "no weight" to Dr. Mitchell's July 19, 2017 physical RFC.  The ALJ stated:

> Dr. Mitchell is a primary care physician.  Her notes document minimal treatment and few findings, and the degree of limitation indicated in her July 2017 statement is inconsistent with her own examination

---

[2]  On January 28, 2017, the Social Security Administration adopted new rules for agency review of disability claims involving the treating physician rule.  *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017).  Because these new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable here.  *See id.*

15

> findings. It appears that this physician mainly just prescribed medication (Exhibits 23F and 24F).

(A.R. 27.) The ALJ's cursory reasoning here fails to build the requisite logical bridge between this conclusion and the record. *See Minnick*, 775 F.3d at 935 (noting that the ALJ must build "a logical bridge from the evidence" to the conclusion). First, the ALJ referenced exhibits that include treatment notes from September 2015 through April 2017, which show that Dr. Mitchell prescribed medication in conjunction with her treatment of Gary's chronic hip, back, and neck pain, among other ailments. (See A.R. 1881, 1883-84, 1925-26, 1928-31.) During an office visit on January 19, 2017, for example, Gary complained of "left hip and back pain" and a "need to check blood sugars." (Id. at 1928.) As such, Dr. Mitchell noted as a treatment plan: "refer to ortho. pain control. remains unable to work permanently." (Id.) Then after Gary underwent hip surgery in March 2017, he presented for another visit, and Dr. Mitchell noted Gary's complaints of neck and low back pain. (Id. at 1925.) Therefore, the court agrees with Gary that the ALJ's comment that Dr. Mitchell "mainly just prescribed medication" is unsupported by the record. Moreover, it is not unusual that Dr. Mitchell, who had seen Gary "some 28 visits from December 2013 through Match 2017," (R. 19, Govt.'s Mem. at 9), would prescribe medication, *see Estes v. Colvin*, No. 14 CV 3377, 2016 WL 1446218, at *4 (N.D. Ill. April 11, 2016) (admonishing ALJ for attempting to minimize claimant's treatment relationship with his long-time family physician by asserting that the physician "generally just prescribed medication").

Additionally, the ALJ cites another exhibit elsewhere in her decision that includes treatment notes from October 2013 through June 2015, including a February 2015 note indicating that Gary presented "with walker, unable to do leg lifts, no lifting of any kind." (A.R. 25 (citing id. at 786).) In another record Dr. Mitchell noted that Gary presented with an antalgic gait in August 2016 and again in January 2017 because of "low back pain." (Id. at 1931, 1929.) These notes appear to support the walking restrictions Dr. Mitchell assigned in her July 2017 physical RFC. They also belie the ALJ's assertion that Dr. Mitchell's opinion is inconsistent with her examination findings. Therefore, the ALJ should have addressed this line of evidence in her decision. *See Herron*, 19 F.3d at 333 ("Our cases consistently recognize that meaningful appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence.").

Dr. Mitchell's treatment notes are somewhat unclear with respect to her treatment and findings, but if the ALJ wanted to dismiss the treating physician's opinion on this basis she should have provided more than the vague, one sentence statement that she offers here. Specifically, she needed to consider the factors enumerated in 20 C.F.R. § 404.1527(c), including the consistency between Dr. Mitchell's July 2017 opinion and the rest of the record. *See also Allen v. Astrue*, 721 F. Supp. 2d 769, 781 (N.D. Ill. 2010) (noting that while the ALJ need not explicitly discuss and weigh each factor in her decision, she still needs to "minimally articulate" her reasoning). The court cannot decipher from the ALJ's decision how, if at all, she considered all of the regulatory factors.

The government attempts to bolster the ALJ's lack of explanation by pointing to "an array of medical evidence from other providers that" undermines Dr. Mitchell's "extreme opinion." (R. 19, Govt.'s Mem. at 10-11.) But the ALJ did not cite inconsistencies between Dr. Mitchell's opinion and the rest of the medical evidence as a reason for dismissing her July 2017 opinion, and the court's review is confined to "the rationale offered by the ALJ." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

**C.     Appointments Clause**

Gary has also brought an Appointments Clause challenge as an alternative argument. Specifically, relying on the Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), Gary argues that the case must be remanded because the ALJ who presided over his hearing is an inferior officer under the Appointments Clause and was not constitutionally appointed. (R. 16, Pl.'s Mem. at 20-21.) The government argues that Gary has forfeited his Appointments Clause challenge by failing to raise it in the administrative process. (R. 19, Govt.'s Mem. at 16.) Whether claimants must raise an Appointments Clause challenge before the ALJ or Appeals Council to avoid forfeiture is currently a matter of debate among federal courts. Only two district courts in this circuit have expressly addressed the issue,[3] and they join the majority position among district courts, which is that where

---

[3] *See Marilyn R. v. Saul*, No. 4:18-CV-04098, 2019 WL 4891703 (C.D. Ill. Sept. 13, 2019); *Brooks v. Saul*, No. 17 CV 699, 2019 WL 4667920 (W.D. Wis. Sept. 25, 2019); *see also Vandegrift v. Saul*, No. 3:18-CV-971, 2019 WL 6243046 (N.D. Ind. Nov. 22, 2019) (remanding on other grounds and therefore declining to address the claimant's challenge under *Lucia*).

18

claimants fail to assert Appointments Clause challenges in the administrative process they forfeit the challenge.[4] Most recently though, the Third Circuit became the first appeals court to hold that social security claimants "may raise Appointments Clause challenges in federal court without having exhausted those claims before the agency." *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, __F.3d__, 2020 WL 370832, at *2 (3d Cir. Jan. 23, 2020).

As noted by both parties, in the wake of *Lucia* the then-acting Commissioner ratified the appointments of the SSA's ALJs and approved those appointments as her own. Soc. Sec. Admin., EM-180003 REV 2, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process—UPDATED (Aug. 6, 2018). Therefore, the ALJ handling this case on remand will not be vulnerable to the same Appointments Clause challenge that Gary raises here. Because remand will not implicate an Appointments Clause problem the court need not address the forfeiture issue.

## Conclusion

For the foregoing reasons, the court grants Gary's motion for summary judgment, denies the government's, and remands the case to the SSA for further proceedings consistent with this opinion.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**

---

[4] Gary filed his request for review three months before the *Lucia* decision.